IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| KENNEDY L. FORDHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-080 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Kennedy L. Fordham appeals the decision of the Acting Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff protectively applied for DIB and SSI on April 10, 2007, alleging a disability onset date of February 10, 2007. Tr. ("R."), pp. 151-61, 189, 414. Plaintiff was forty-two years old on his alleged disability onset date and was forty-nine years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 151, 411.

Plaintiff applied for benefits two months after he drove his car into a tree subsequent to drinking approximately one case of beer and using cocaine. R. 284, 302. Plaintiff claimed he was disabled based on allegations of neck, back, and shoulder injury, as well as depression. R. 182, 442-43. Plaintiff completed tenth grade, and prior to his alleged disability, Plaintiff had accrued a relevant work history that included over fifteen years as a car washer/cleaner, as well as buffing and sorting metal pieces at a manufacturing plant and trimming electronic components. R. 183, 426, 439, 452.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 92-99, 102-09. Plaintiff requested a hearing before an ALJ, R. 110-11, and the ALJ held a hearing on February 23, 2010. R. 29-67. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Tina Baker-Ivy, a Vocational Expert ("VE"). Id. On May 27, 2010, the ALJ issued an unfavorable decision. R. 13-28. After the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-5, Plaintiff filed a civil action in this Court requesting a reversal or remand of that adverse decision. See Fordham v. Astrue, CV 311-072 (S.D. Ga. July 14, 2011). At the Commissioner's request, the Court remanded the case for further consideration of Plaintiff's claims. R. 484-85. In particular, the Court instructed the ALJ "to re-evaluate the report of Dr. Marvin Long and issue a new decision that includes findings of whether the plaintiff has an impairment that meets or equals the criteria of Listing section 12.05B or 12.05C." R. 484.

Upon remand, the ALJ held a hearing on December 19, 2013. R. 432-59. At the hearing, the ALJ heard testimony from Plaintiff, who was again represented by counsel, as well as from Dennis Patrick Conroy, a VE. Id. On March 21, 2014, the ALJ issued an unfavorable decision. R. 411-31.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since February 10, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*), and he meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has the following severe impairments: polysubstance abuse, depression secondary to polysubstance abuse, and dyslexia (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. Claimant has no physical, postural, or environmental limitations, but with the following nonexertional limitations: polysubstance abuse, depression secondary to polysubstance abuse, and dyslexia limiting him to performing work activities with a specific vocational preparation of 1-2. His social interaction with the public should be limited to no more than 1/3 of an eight-hour workday, but he can work in close proximity with them throughout the entire workday. His work should not require him to read, write, or perform simple mathematical computations, such as adding/subtracting, in order to complete assigned tasks successfully. The claimant is capable of performing past relevant work as a car washer/cleaner and buffer. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 416-26.

Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 10, 2007, through the date of the decision, March 21, 2014. R. 426. When the AC denied Plaintiff's second request for review, R. 394-99, the Commissioner's decision became "final" for the purpose of judicial review. 42

U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred in finding Plaintiff did not meet Listing 12.05B or 12.05C and in failing to give appropriate weight to the opinion of Plaintiff's treating psychiatrist. See doc. no. 14 ("Pl.'s Br."); doc. no. 18 ("Pl.'s Reply"). The Commissioner maintains the ALJ's decision is supported by substantial evidence. See doc. no. 17.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the

4

Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff claims the ALJ erred in determining he does not meet the requirements of Listing 12.05B or 12.05C. As summarized by Plaintiff, "At the heart of this appeal are the results of the examination performed on July 23, 2007, by the Commissioner's consulting psychologist, Dr. Marvin Long, [Ed.D.]." Pl.'s Br., p. 5. Dr. Long scored Plaintiff with a Verbal IQ of 61, a Performance IQ of 58, and a Full Scale IQ of 56, and Dr. Long diagnosed Plaintiff with "Mental Deficiency – Mild." R. 334-35. Plaintiff maintains that had the ALJ afforded proper weight to Dr. Long's IQ scores and mild mental deficiency diagnosis, his mental impairment would have been identified as a severe impairment at Step Two of the sequential process and in fact, because of additional severe impairments identified by the ALJ, he would

have been entitled to benefits under Listing 12.05B and 12.05C at Step Three of the sequential process.

### A. The Failure to Identify Mild Mental Deficiency as a Severe Impairment at Step Two Does Not Warrant Remand.

This portion of Plaintiff's argument is a red herring because the ALJ determined Plaintiff had multiple severe impairments, including dyslexia, and thus continued on with the sequential process by carefully considering any limitations imposed by Plaintiff's intellectual functioning and incorporating them in Plaintiff's RFC. See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (finding no error at step two where ALJ identified status-post cervical fusion but not separately diagnosed chronic back pain as a severe impairment because ALJ continued on to consider all impairments in combination, including claimant's subjective complaints, limitations, and diagnoses related to pain during remaining steps of sequential process). Moreover, using the skill level definitions in 20 C.F.R. § 404.1568 and 416.968(a), the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). In assigning Plaintiff an RFC restricting him to work activities with an SVP no greater than 1-2, the ALJ limited Plaintiff to unskilled work and thus considered Plaintiff's mental proficiency throughout the sequential process. The VE confirmed at the hearing Plaintiff's past relevant work as a car washer/cleaner was performed at SVP 1, and as a buffer was performed at SVP 2. R. 452-53.

In addition, a severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental

ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. §§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id. §§ 404.1521(b) & 416.921(b).

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). As discussed in detail below, substantial evidence supports the ALJ's determination that any additional mental impairment does not significantly affect Plaintiff's ability to perform basic work activities, including prior relevant work as a car washer/cleaner that Plaintiff successfully performed for fifteen years.

**B. The Requirements for Satisfying Listing 12.05B and 12.05C at Step Three of the Evaluation Process**

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v.

Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan

v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05B states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 59 or less." Id. § 12.05B. Listing 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C. Thus, a claimant generally meets the Listing 12.05C criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05C claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

9

### C. The ALJ's Finding Plaintiff Did Not Meet Listing 12.05 B or 12.05C Is Supported by Substantial Evidence.

#### 1. ALJ's Analysis of Findings from Dr. Long's Consultative Examination

Plaintiff bases his argument for remand primarily on the assertion the ALJ misinterpreted the findings of Dr. Long during his consultative examination performed on July 23, 2007. R. 331-35. In particular, Plaintiff contends the ALJ improperly rejected Dr. Long's IQ scores and diagnosis of mild mental deficiency. As discussed *supra*, the ALJ considered and accounted for any mental deficiency by limiting Plaintiff to unskilled work with an SVP of 1-2.

Although a low IQ score raises a presumption of intellectual disability, that presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of intellectual disability. See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). Furthermore, the results of standardized tests are only part of the overall assessment, which includes an analysis of daily activities and behavior for a determination on whether there are deficits in adaptive functioning. See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910, 912-13 (11th Cir. 2015). The ALJ's extensive review of the record shows that even if the Court were to accept Plaintiff's argument the ALJ improperly discredited the validity of Dr. Long's IQ scores, Plaintiff has not established he meets Listing 12.05B or 12.05C.

The ALJ found Plaintiff did not have the requisite valid IQ scores because Dr. Long stated Plaintiff's scores in 2007 were "probably an under-estimation of his general applied capability," stated there were problems on the Validity Scale with exaggeration, and at least three times warned the reader to be "careful" of the scores. R. 332-35, 418, 421, 422, 423. The ALJ also noted Plaintiff's treating source, Manuel P. Lucero, M.D., found Plaintiff in 2010 to be of average intelligence and not to exhibit signs of cognitive impairment. R. 419, 421, 423, 592.

Moreover, the ALJ relied on the opinions of state agency medical consultants George Ude, Ph.D., and Mark A. Williams, Ph.D., who opined Plaintiff's IQ scores underestimated his abilities, Plaintiff did not have requisite deficits in adaptive functioning, and Plaintiff's history of successfully working without accommodations did not support a finding of intellectual disability that would prevent him from working. R. 350, 372, 425-26.

The Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) and 416.927(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Thus, the ALJ validly relied on the opinions of two state agency consultants and a treating source as a basis to discredit Dr. Long's scores obtained during a one-time consultative examination in 2007.[1]

Plaintiff's strenuous argument the ALJ misstated the evidence as it relates to the ALJ's characterization of Dr. Long's report misses the mark. Dr. Long repeatedly advised caution in considering Plaintiff's scores, noting problems with validity scales, but Plaintiff argues Dr. Long never *specifically* stated the IQ scores were invalid. Therefore, he argues it was erroneous for the ALJ to discredit the scores. The ALJ cited Dr. Long's report, which does in fact, urge caution in

---

[1] Plaintiff's argument about the ALJ discrediting the opinion of treating psychiatrist A. James Giannini, M.D., is addressed in detail in Part III(C)(2), *infra*.

11

interpreting the scores. However, the ALJ went on to rely on multiple other pieces of evidence to support his conclusion the IQ scores were not valid, including several factors highlighted in Dr. Long's report: Plaintiff's performance of a variety of jobs over a years-long time period, subtest results ranging from deficient to the mid-borderline range, and an ability to take care of his daily needs and live by himself. R. 332-35, 417-19, 421-22. Much of Plaintiff's argument goes to how the ALJ weighed the evidence, a task beyond this Court's purview. Cornelius, 936 F.2d at 1145.

Similarly, Plaintiff's argument the ALJ improperly considered Plaintiff's work history as a ground to reject Dr. Long's findings on Plaintiff's mental functioning misses the mark. Although Plaintiff relies heavily on the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") in support of this argument, (Pl.'s Br., pp. 9-10), the ALJ is not required to follow the guidelines set forth in the DSM. See Cammon v. Astrue, CV 308-0131, 2009 WL 3245458, at *11 (N.D. Ga. 2009) ("Although the language of Listing 12.05 closely tracks the diagnostic criteria for mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association 4th ed. 1994) ("DSM-IV"), there are differences between the two.") The diagnostic criteria in the mental disorders listings are not confined to the analysis in the DSM. See id. Thus, whether a Plaintiff meets the DSM definition of intellectual disability is not dispositive.

Second, even if the ALJ found the IQ scores to be valid, the record as reviewed by the ALJ shows Plaintiff did not have the requisite deficits in adaptive functioning to meet Listing 12.05B or 12.05C. R. 421-22, 424-25. The ALJ reviewed Plaintiff's daily activities and behavior. The ALJ found only mild restrictions in activities of daily living. R. 421. Plaintiff reported living alone, and he could cook, shop, and take care of his personal needs. R. 193, 195,

223, 226, 251, 252, 421, 448. At the evidentiary hearing, Plaintiff testified it was his neck, back, and depression that kept him from working. R. 442-43. He did not mention any intellectual impairment as a barrier to work. The ALJ also found moderate difficulties in social functioning and concentration, persistence, and pace. R. 421. All of these characteristics were taken into account in formulating Plaintiff's RFC, as the ALJ limited Plaintiff to jobs with an SVP of 1-2, unskilled work, with limited social interaction and excluding jobs requiring reading, writing, or performing even simple mathematical computations to complete assigned tasks. R. 423.

Plaintiff argues the ALJ is required "to look at the big picture when considering IQ scores and mental functioning." Pl.'s Br., p. 10. That is exactly what the ALJ did. The ALJ explained in detail why Dr. Long's IQ scores were not considered valid. But even if they were considered valid, the ALJ properly considered Plaintiff's lengthy work history of more than fifteen years, ability to live alone, and ability to take care of his personal needs to determine Plaintiff did not meet Listing 12.05B or 12.05C and was able to return to his past unskilled work as a car washer/cleaner or buffer, both jobs the VE confirmed Plaintiff could perform. Plaintiff relies heavily on the argument that his past work was performed at an SVP of 1, the lowest level of functioning classified, to suggest the ALJ improperly relied on work history to discount Dr. Long's findings about Plaintiff's mental capacity. See, e.g., Pl.'s Br., pp. 9-10; Pl.'s Reply, pp. 3-4. However, Plaintiff has no explanation as to why, if he had successfully performed unskilled work for more than fifteen years, the ALJ could not rely on that work history to conclude Plaintiff had the mental capacity to return to such unskilled work after recovering from an alcohol and drug-induced car crash. Cf. Lowery, 979 F.2d at 837 ("[A] valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").

Plaintiff also complains the ALJ did not mention Plaintiff had taken special education classes or acknowledge a singular notation of "mentally challenged" on a 2008 Emergency Physician Record concerning Plaintiff's back pain. Pl.'s Reply, p. 3; R. 386. There is no requirement an ALJ reference every piece of evidence in the record. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). There was no error in failing to mention every notation or reference to Plaintiff's mental capacity or schooling where, as here, the record reveals the ALJ (1) was well aware of the allegations of intellectual impairment, indeed acknowledged Plaintiff's tenth grade education, (2) extensively reviewed findings from multiple doctors regarding Plaintiff's intellectual capabilities, and (3) limited Plaintiff to unskilled work requiring no reading, writing, or even simple mathematical computations. As discussed in detail above, the ALJ extensively reviewed the evidence related to Plaintiff's intellectual capacity for work, and his conclusion that Plaintiff could perform past relevant work at the lowest SVP possible, as he had done for more than fifteen years, is supported by substantial evidence.

### 2. Weight Afforded to Dr. Giannini's Opinion

Plaintiff also argues the ALJ failed to accord proper weight to the opinion Dr. Giannini, a psychiatrist who saw Plaintiff monthly, for approximately three months, in 2007 and once more in 2010. Pl.'s Br., pp. 13-17; R. 304-30, 381-83, 391-93. On June 19, 2007, Dr. Giannini partially completed a Mental Impairment Questionnaire, which instructed, "Please check the boxes as appropriate and if abnormal or limited, please explain." R. 328-30. Although he checked the box for "abnormal" on appearance and general behavior, as well as ability to make simple work-related decisions, Dr. Giannini did not provide any comments to explain his choice. Dr. Giannini failed to check any box for content of thought or thought processes and flow of

14

mental activity, though he did write Plaintiff had dyslexia and occasional thought blocking for the spoken word. R. 328-29. He also left the diagnosis question completely blank. R. 329. Other opinions on Plaintiff's mental state included decreased affect and dysphoric mood, patchy recent memory but fair recall and intermediate memory, poor impulse control, and an ability to get along with others only on a one-on-one basis. R. 328-30.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

The ALJ gave Dr. Giannini's opinions "a smidgeon (more than 'no' evidentiary value but less than 'mild' evidentiary value) of evidentiary weight, but not significant or controlling weight for the period from March through June of 2007." R. 417. In explaining his decision, the ALJ stated Dr. Giannini failed to discuss the relationship of Plaintiff's drug and alcohol abuse as it relates to his limitations, or the relationship between Plaintiff's depression and alleged pain. R. 417. Further, the ALJ specifically detailed how the questionnaire conflicted with treatment notes. For example, although Dr. Giannini marked Plaintiff's appearance and general behavior as abnormal and having decreased affect and dysphoric mood, R. 328, treatment notes identify a mildly restricted affect and no indication of, or mild, dysphoria. R. 316, 320, 324. His clothes were described as matching and coordinated. R. 320. His demeanor was "friendly and engaging." R. 312, 320. The ALJ also identified Dr. Giannini had only treated Plaintiff for three months and had not opined Plaintiff would function at the stated level for the requisite twelve-month period. R. 417.

Moreover, when Plaintiff returned to Dr. Giannini for one visit, three years later, Plaintiff's overall appearance was "clean and neat," and his demeanor was "friendly and engaging." R. 391, 419. Plaintiff's affect was minimally restricted, and mood was euthymic. R. 392, 419. In contrast to Dr. Giannini's earlier opinion about Plaintiff's patchy recent

16

memory, he now opined Plaintiff was in the low normal range for recall and intermediate memory, though his remote memory was still poor. R. 392, 419.

Plaintiff's argument concerning the Global Assessment Functioning ("GAF") scores of 45 and 51 assigned by Dr. Giannini is likewise unavailing.[2] Pl.'s Br., p. 15. "The Commissioner does not endorse GAF scores in social security disability cases because they have no direct correlation to the severity requirements of the mental disorders listings." Greene v. Comm'r of Soc. Sec., No. 6:11-cv-1357-Orl-GJK, 2013 WL 1278091, at *7 (M.D. Fla. Mar. 28, 2013) (citing Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)) (internal quotation marks omitted). Moreover, in light of the extensive discussion of Plaintiff's mental functioning and the medical documentation available on the topic, including increasing GAF scores (up to 54) throughout Dr. Lucero's treatment relationship, (R. 560-592), the ALJ's failure to discuss Dr. Giannini's GAF scores provides no basis for remand.

The ALJ also relied on the opinions of another treating source, Dr. Lucero, who took over Plaintiff's treatment from Dr. Giannini in April 2010. Records show Dr. Lucero regularly saw Plaintiff from April 13, 2010 through September 4, 2013, and he was routinely described

---

[2]According to the American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders,

> The GAF is a 100-point scale divided into 10 numerical rangers, which permits clinicians to assign a single-ranged score to a person's psychological, social, and occupational functioning. GAF scores of 41 to 50 indicated serious symptoms . . . or any serious impairment in social, occupational, or school functioning . . . ; scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers).

Stone v. Comm'r of Soc. Sec., 586 F. App'x 505, 508 & n.2 (11th Cir. 2014).

as "cooperative and friendly" and compliant with medication. See, e.g., R. 562, 568, 580, 584. As the ALJ pointed out, Dr. Lucero found Plaintiff to be of average intelligence, and although he had no cognitive impairment, he was poorly educated. R. 419, 592. Dr. Lucero opined Plaintiff could follow instructions. R. 419, 592. Although Plaintiff would have the Court re-weigh the evidence to put more emphasis on Dr. Giannini's 2007 opinions over those of Dr. Lucero starting in 2010, that is beyond the purview of this appeal. See Cornelius, 936 F.2d at 1145. The ALJ explained his reasons for the weight accorded to the medical opinions of record, which as discussed above also included the expert opinions of State Agency doctors, and the decision is supported by substantial evidence. That Plaintiff would prefer the Court to attach different weight to the various opinions is no basis for remand.

In sum, substantial evidence supports the ALJ's finding, based on an extensive review of the record, that Plaintiff did not satisfy Listing 12.05B or 12.05C. Not only does substantial evidence support the ALJ's finding Plaintiff did not have valid IQ scores to satisfy the Listings, but Plaintiff did not have the requisite current deficits in adaptive functioning. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in required range due to plaintiff's work experience and daily living activities); Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence to support conclusion claimant did not meet Listing 12.05C, despite participation in special education classes, where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (N.D. Ala. July 25, 2008) (noting no document in record classified claimant as intellectually disabled and

relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05C). The ALJ's decision to afford little weight to the opinion of Dr. Giannini and instead rely on the other medical opinions of records is also supported by substantial evidence. Therefore, the Commissioner's decision should be affirmed.

## IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 13th day of September, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA